IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

GINO EDWARDS, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

IMI NORGREN LLC,

*Defendant.*

Case No.: 21-CV-50338

## SECOND AMENDED CLASS ACTION COMPLAINT

Gino Edwards ("Plaintiff") brings this Second Amended Class Action Complaint ("Complaint") against IMI Norgren LLC ("Norgren" or "Defendant") to put a stop to its unlawful collection, use, storage, and dissemination of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Defendant manufactures pneumatic and hydraulic cylinders.

2. Plaintiff was employed at Defendant's Machesney Park location through 2021 where he used a fingerprint to "punch in and out" as a means to track time worked.

3. Defendant required employees and temporary staffing workers to use a biometric time clock system to record their time worked.

4. When employees first begin their jobs at Defendant's location, they are required to scan their fingerprint in a biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

5. While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

6. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

7. Despite this law, Defendant disregards their workers' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Defendants have violated (and continue to violate) the BIPA because they did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

8. Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

9. Plaintiff is a natural person and a citizen of the State of Illinois.

10. Defendant is a Limited Liability Company and a citizen of both Delaware and

2

Colorado.

11. Specifically, Defendant is a Delaware Limited Liability Corporation. Defendant's sole member is IMI Americas, LLC. The sole member of IMI Americas, LLC is IMI Fluid Control Holdings, Inc., which is a Delaware corporation with its principal place of business in Littleton, Colorado.

## JURISDICTION AND VENUE

12. There is jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

13. Venue is proper in Winnebago County because Defendant operates throughout this County and "resides" in Winnebago County within the meaning of 735 ILCS § 5/2-102(a).

## FACTUAL BACKGROUND

**I.  The Biometric Information Privacy Act.**

14. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

15. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate

3

protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

16. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

17. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

18. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

19. Biometric identifiers include retina and iris scans, fingerprints, voiceprints, scans of face geometry, and—most importantly here— fingerprints. *See* 740 ILCS 14/10. Biometric

4

information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

20. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

21. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II.  Defendant Violates the Biometric Information Privacy Act.**

22. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

23. Unfortunately, Defendant failed to take note of the passage of the BIPA despite that it has been in effect for over a decade and Defendant are presumed to know the law. Defendant

continued to collect, store, and use its workers' biometric data in negligent, and potentially willful or reckless, violation of BIPA.

24. Specifically, when workers perform work at Defendant, they are required to have their biometric data scanned to enroll them in a fingerprint database.

25. Plaintiff recalls, and therefore alleges, that Defendant required that the workers (including themselves) were required to utilize biometric time clocks.

26. Defendant uses an employee time tracking system that required employees to use their fingerprints as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprints to "punch" in to or out of work.

27. Defendant failed to inform their workers of the complete purposes for which they collect their sensitive biometric data or to whom the data is disclosed, if at all.

28. Defendant similarly failed to provide their workers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Defendant's databases— or if they ever will be.

29. Upon information and belief, Defendant fails to inform its employees that it discloses their fingerprint data to other, currently unknown third parties, which host the biometric data in their data centers, equipment; and software, and fails to obtain consent to the disclosure and sharing of information.

30. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Defendant's — whose workers are aware that they are providing biometric

identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Defendant disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

31. Ultimately, Defendant disregards their workers' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF

32. Plaintiff worked for Defendant through 2021

33. Defendant required Plaintiff to scan Plaintiff's fingerprints so that it could be used as an authentication method to track time. Defendant subsequently stored Plaintiff's fingerprints data in their databases.

34. Each time Plaintiff began and ended a workday, Defendant required a scan of Plaintiff's fingerprints.

35. Defendant never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

36. Similarly, Defendant never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

37. Plaintiff never signed a written release allowing Defendant to collect or store fingerprints.

38. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of the BIPA alleged herein.

39. Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Defendant has caused.

## CLASS ALLEGATIONS

40. **Class Definition**: Plaintiff brings this action on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All persons who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by any of Defendant while in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

41. Plaintiff and the Class are similar to one another because they were all subject to the same allegedly illegal practices: scanning their fingerprints in Defendant's biometric time clock system despite Defendant failing to adhere to the requirements of the Biometric Information Privacy Act.

42. The Class includes at least 200 members. *See* ECF No. 1, Notice of Removal, p. 4.

43. As a result, the Class is so numerous that joining of all class members in one lawsuit is not practical.

44. The issues involved in this lawsuit present common questions of law and fact, including: whether Defendants required the Class to use their fingerprints to clock in and out during shifts; whether Defendants collected the Class's biometric identifiers or information; and

whether Defendants complied with the procedures in 740 ILCS 14/15(a)-(d) of the Biometric Information Privacy Act.

45. These common questions of law and fact predominate over the variations that may exist between members of the Class, if any.

46. Plaintiff, the members of the Class, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

47. If individual actions were required to be brought by each member of the Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendants.

48. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

49. The books and records of Defendants are material to Plaintiff's case as they disclose how and when Plaintiffs and the Class scanned their fingerprints in Defendants' biometric time clock system and what information Defendants provided Plaintiffs and the Class about the collection, retention, use, and possession of their biometric identifiers and information.

50. Plaintiff and counsel will fairly and adequately protect the interests of the Class.

51. Plaintiff retained counsel experienced in complex class action litigation.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

52. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a

customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

54. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

55. Unfortunately, Defendant fails to comply with these BIPA mandates.

56. Defendant qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

57. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendant (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

58. Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

59. Defendant violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

60. Defendant violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

61. Defendant violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

62. Defendant violated 740 ILCS 14/15(a) by failing to publicly provide and follow a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

63. Defendant systematically and automatically shared, disclosed, redisclosed, or otherwise disseminated Plaintiff's biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

64. By collecting, storing, and using Plaintiff's and the Class' biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

65. On behalf of themselves and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant's to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate the BIPA;

C. Awarding statutory damages for each of Defendant's violations of the BIPA, pursuant to 740 ILCS 14/20;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H. Awarding such other and further relief as equity and justice may require.

Dated: September 24, 2021

Respectfully submitted,

**Gino Edwards individually and on behalf of all others similarly situated,**

/s/Mara Baltabols
*One of the Attorneys for Plaintiff and the Putative Class*

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
FISH POTTER BOLAÑOS, P.C

200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400 /
[docketing@fishlawfirm.com](mailto:docketing@fishlawfirm.com)

# **CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served via ECM/CF filing system on September 24, 2021 to all counsel of record.

Dated: September 24, 2021

                                        /s/Mara Baltabols
                                        *One of the Attorneys for Plaintiff and*
                                        *the Putative Class*